JOHN CHARLTON and THOMAS CHARLTON, Appellants and Respondents, *v.* CORA I. SCOVILLE and CHARLES H. SCOVILLE, Respondents and Appellants.

*Amendment of answer — building contract — abandonment by both parties before completion.*

An answer admitted certain allegations of the complaint, but on the trial before the court the plaintiff, instead of relying upon such admissions, gave evidence in support of the allegations of the complaint, and the defendant thereupon gave evidence to the contrary, and in contradiction of the admissions in his answer, and the question was tried.

*Held,* that it was within the discretion of the trial court to permit the answer to be amended so as to conform to the evidence given.

After part performance by a contractor, of a contract with the owner of premises to furnish the labor and materials required in erecting a building, the contractor ceased work and abandoned the contract, and thereby forfeited his right to any installments thereafter to become payable under the contract, and the owner of the premises also abandoned the contract, took down the work already done as being defective, and, without having paid the contractor anything, rebuilt the building, using, in so doing, the contractor's materials.

*Held,* that the contractor might, on foreclosing a mechanic's lien, recover the value of his materials so used, less the expense to the owner of taking down the original defective work.

A contract for furnishing the labor and material in erecting a building provided that, should the contractor fail to perform the contract in any particular and the architect so certify, the owner of the premises might give the contractor a certain number of days' notice to perform, and, in case of the contractor's refusal, neglect or failure to perform within the time specified, that then the owner might terminate the employment of the contractor and enter upon the premises and take possession of the material thereon, employ other persons and complete the building himself.

*Held,* that the owner (after having himself terminated and abandoned the contract before the expiration of the time allowed by the contract for the contractor to perform after notice so to do) could not go on and complete the building himself and then recover from the contractor, under a counterclaim in an action brought by the contractor to foreclose a mechanic's lien, the difference between the cost of the building and the contract price.

APPEAL by the plaintiffs, John Charlton and Thomas Charlton, from so much of a judgment of the Supreme Court, entered in the office of the clerk of Erie county on the 3d day of May, 1892, upon the decision of the court at Special Term, as adjudicates

that the defendants are only indebted to the plaintiffs in the sum of $194.50, and interest upon the same from November 13, 1890, and from an order made by the trial judge, permitting the defendants to amend their answer.

Appeal by the defendants, Cora I. Scoville and Charles H. Scoville, from the whole of the said judgment.

*George Wing*, for the plaintiffs.

*Leroy Parker*, for the defendants.

HAIGHT, J.:

This action was brought to foreclose a mechanic's lien. On the 26th day of August, 1890, the plaintiffs entered into a contract in writing with the defendant, Charles H. Scoville, to furnish the material and construct a dwelling house upon the premises of the defendant, Cora I. Scoville, for the sum of $3,980. The work was to be done in a workmanlike manner, according to the plans and specifications attached to the contract and under the direction and to the satisfaction of F. William Fisher, an architect. Charles H. Scoville was the husband of Cora I. Scoville, and he entered into the contract with her knowledge and consent and for her benefit. The plaintiffs sublet the carpenter work to another person, who commenced work upon the construction of the building on the twenty-second day of September and continued work thereon until the third day of October, at which time he ceased work upon the premises, leaving the building unfinished. Subsequently this action was brought.

The trial court found as facts, that the building, as far as it had progressed, had not been constructed in accordance with the provisions of the contract, that improper materials had been furnished, and that the work had not been performed in a workmanlike manner. That on the thirtieth day of September notice was given to the plaintiffs to remove all labor and materials condemned by the architect and to provide materials called for in the specifications on or before the fourth day of October at nine o'clock A. M. That the plaintiffs expressed a willingness to remedy the defects, and through their employees did remedy certain defects, but not all. That on the third day of October they abandoned the work. That there-

upon the defendants took possession of the building, hired the same torn down, at an expense of $40.50, and reconstructed the same to the point where the building was abandoned, at an expense of $123.50, using therefor the materials of the plaintiffs that were in the building and left upon the grounds, of the value of $318, and ordered judgment for the sum of $194.50, being the value of the materials used in the construction, $318, less the cost of rebuilding the same, $123.50.

This judgment was ordered upon the theory that the defendants had abandoned the contract on their part, after the plaintiffs had committed a breach of the contract on their part. That the defendants, in using the plaintiffs' material in the new structure, were obliged to pay therefor, less the sum of $123.50, which the defendants had suffered as damages in reconstructing the building to the point where it was abandoned by the plaintiffs.

The complaint alleged that on the 2d day of October, 1890, the defendants, without any just cause for so doing, notified the plaintiffs' workmen to cease work upon the house and ordered them off the premises, forbidding them coming again upon the land, and that no work had been done or material furnished by the plaintiffs since.

The answer admitted that on or about the 2d day of October, 1890, the defendant, Charles H. Scoville, notified the plaintiffs and their workmen to cease work upon the said house, and that the plaintiffs have done no work and furnished no material since that time. But they deny that he so notified the plaintiffs and their workmen without just cause. It, therefore, stood admitted upon the pleadings that the plaintiffs and their workmen were ordered to cease work upon the house by the defendants, and the issue left to be tried in reference thereto was whether such order was justified.

Upon the trial the defendants were permitted to give evidence that the plaintiffs and their workmen were not ordered to cease work upon the house and were not ordered off the premises, but, on the contrary, that they voluntarily abandoned the work. This evidence was taken under the objection that it contradicts the admissions in the answer. The court, however, admitted the same, remarking, "If it turns out they are precluded by the pleadings, that will end it." No exception was taken to the ruling. After the evidence was closed an adjournment was taken for a number of

days, at which time the case was summed up by the counsel for the respective parties. After the arguments had closed the defendants' counsel asked leave to amend his answer so as to deny the allegations in the complaint that " on the 2d day of October, 1890, when the defendants, without any just cause for so doing, notified the plaintiffs' workmen to cease work upon said house and ordered them off the premises and forbid their coming again upon said land above described " in the complaint. This was objected to by the plaintiffs' counsel, upon the ground that the evidence had been closed for two weeks and that the plaintiffs had relied upon the admissions in the answer of the defendants, and if the answer was amended as requested, there was no opportunity to prove the facts as alleged in the complaint. The court reserved its decision, but in disposing of the case it allowed the amendment of the answer and found as a fact that the building was abandoned by the plaintiffs, and refused to find the plaintiffs' request that the defendants notified the plaintiffs' workmen to cease work upon the house and ordered them off the premises.

There would be just cause for complaint on account of these rulings, were it not for the fact that the plaintiffs had first opened the door and given evidence in support of their allegation. Evidence upon this subject was given as a part of the plaintiffs'. affirmative case, and also upon the rebuttal. The question having thus been tried out, it was within the discretion of the trial court to permit the answer to be amended so as to conform to the evidence given.

As we have seen, the trial court found that the plaintiffs ceased work upon the house and contract, and by this act they forfeited their right to recover any of the installments under the contract thereafter to become payable. The building as far as it had progressed, became the defendants'. They had, however, paid nothing thereon, and had consequently suffered no damages, unless, as it is claimed, it was so defectively constructed as to make it necessary that it should be torn down. If so, it was but an obstruction upon their premises, which they had a right to tear down, move away, or dispose of as they saw fit. It was torn down at an expense of $40.50. The building was reconstructed according to the original plans and specifications. It cost $123.50 to reconstruct it to the point where it was abandoned by the plaintiffs. This the trial court found was a proper item of damages to be deducted from the plaintiffs' claim.

We are at a loss to understand upon what theory this item can be allowed. For, as we have seen, the defendants had paid nothing upon the building, and had suffered no damages further than the expense of tearing down the defective structure. We are aware 'of no rule that would require the plaintiffs to rebuild the building to that point. The value of the plaintiffs' material upon the premises, that was used by the defendants in the new structure, was $318. From this sum there should be deducted the expense of tearing down the building, $40.50, and the plaintiffs should have recovered a judgment for the balance.

The plaintiffs were awarded judgment upon the theory that the defendants had abandoned the contract on their part. Their right to recover cannot be maintained unless this theory is supported by the evidence. And this brings us to a consideration of the defendants' appeal.

Section 4 of the contract provides that " the contractors shall within twenty-four hours after receiving written notice from the architect to that effect, proceed to remove from the grounds or building all materials condemned by him, whether worked or unworked, or to take down all portions of the work which the architect shall condemn as unsound or improper, or as in any way failing to conform to the drawing and specifications, and to the conditions of this contract. The contractors shall cover, protect and exercise due diligence to secure the work from injury, and all damage happening to the same by their neglect shall be made good by them."

Section 12 provides, " should the contractors at any time refuse or neglect to supply a sufficiency of properly-skilled workmen or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements on their part herein contained, such refusal, neglect or failure being certified by the architect, the owner shall be at liberty, after three days' written notice to the contractors, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractors under this contract. And if the architect shall certify that such refusal, neglect or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the

contractors for the said work and to enter upon the premises and take possession of the materials thereon, and to employ any other person or persons to finish the work and to provide the materials therefor; and in case of such discontinuance of the employment of the contractors they shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractors, but if such expense shall exceed such unpaid balance contractors shall pay the difference to the owner. The expense incurred by the owner, as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architect, whose certificate thereof shall be conclusive upon the parties."

On the thirtieth day of September the architect certified that the work, labor and material upon the house was not being done in accordance with the plans and specifications. Thereupon the defendant, Charles H. Scoville, served upon the plaintiffs the following notice :

" I herewith give you three days' written notice, to expire October 4th, at 9 A. M., to remove all labor and materials condemned by the architect, Mr. F. Wm. Fisher, and to provide such materials as are called for in the specifications.

" I also notify you that I shall make use of the power given me under part twelve in the contract to terminate the employment of the contractor who shall do said carpenter work."

And at the same time took from the plaintiffs' possession the plans and specifications.

It will be observed that the notice requires the plaintiffs to remove the materials condemned, and to provide such material as is called for by the specifications. And in the same connection, notice is given that they terminate the employment of the contractors under the power given them under part twelve. So by the notice the plaintiffs' right to proceed in the construction of the building was terminated, and yet they were required to provide the materials called for in the specifications. There appears to have been some

confusion in construing section 12 of the contract. The language used therein might have been made more clear and specific. But we think the meaning is apparent. It is, in substance, that should the contractors fail to perform, in any particular, the provisions of the contract, and the architect should so certify, the defendants might give them three days' notice to perform, and in case of their refusal, neglect or failure to perfrom within the time specified, then the defendants would be at liberty to terminate the employment of the contractors and to enter upon the premises and take possession of the materials thereon, employ other persons and complete the building themselves, etc.

The defendants requested the trial court to find, that "the defendant, Charles H. Scoville, took possession of the said building and material and employed other persons to take the building down to the foundation, at an expense of forty dollars and fifty cents, and to rebuild the same to the point where plaintiffs had left it, and to complete the same according to the original plans and specifications at an expense of $4,480 for the carpenter work and materials, and of $150 for the sheet-metal, tin and galvanized iron work, making a total expense to defendant of $690.50 over and above the price agreed to be paid to plaintiffs." This finding was refused. The request appears to be in accordance with the undisputed evidence and might properly have been found. This would entitle the defendants to recover their counterclaim, were it not for the fact that they had terminated the contract by their notice of September thirtieth, and by their taking from the plaintiffs the plans and specifications.

True, the plaintiffs abandoned the contract on the third day of October, as found by the trial court, but this was after the notice had been served upon them by the defendants to which we have referred. The defendants had no right to then terminate the employment of the plaintiffs. This, as we have seen, could not be done until after October fourth, at nine A. M., and not then unless the architect should certify that the plaintiffs had failed to correct the defects and perform the contract. But the defendants having assumed to terminate the employment on the thirtieth, the plaintiffs had the right to accept the situation thus presented and themselves treat the contract as at an end.

In view of the situation thus presented we think that the defendants' claim for damages of the difference between the contract price and the amount paid by them for the completion of the work should not be allowed.

The order appealed from should be affirmed, and the judgment should be modified by awarding to the plaintiffs the sum of $318, less $40.50, amounting to $277.50, with interest on that sum from the 13th day of November, 1891, and as so modified affirmed, with the costs of this appeal to the plaintiffs.

All concurred.

Order appealed from affirmed, and the judgment appealed from modified, as indicated in the opinion, with costs to the plaintiffs.